**IN THE COURT OF APPEALS OF IOWA**

No. 17-0826
Filed July 19, 2017

**IN THE INTEREST OF R.J. and X.W.,**
**Minor Children,**

**R.J., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

　　A father appeals a permanency review order transitioning two children from his temporary custody to the custody and care of their mother.  **AFFIRMED.**

　　Joshua T. Cobie of Brubaker, Flynn & Darland, P.C., Davenport, for appellant father.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, guardian ad litem for minor children.

　　Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother's two children were removed from her care and placed with the father of one of the children. This father appeals a permanency review order transitioning both children from his temporary custody to the custody and care of their mother.

## I.    *Background Facts and Proceedings*

The department of human services became involved with the family in mid-2015 based on the mother's heroin and cocaine use. The district court removed the children from the mother's care and placed them in the temporary custody of the younger child's father.[1] Except for a few days, the children remained in his temporary custody through the permanency review hearing.

Meanwhile, the mother progressed with substance abuse treatment and, in mid-2016, the district court ruled that the children could likely be returned to her custody within six months. Given her continued progress, the court later filed a permanency order authorizing the children's transition to her care and custody in the ensuing two months.

During this transition period, the department discovered that the mother had been dishonest with the agency on several fronts. A month before the permanency review hearing, the department curtailed overnight visits and moved to fully supervised visits. At the permanency review hearing, the professionals involved with the case, including the guardian ad litem, recommended against returning the children to her care.

---

[1] Although the older child's father sought and obtained telephone contact with his eight-year-old child and testified he wished to parent the child, he lived out of state and never served as the child's caretaker.

The district court characterized their concerns as "valid" but found "no evidence that the mother has relapsed or that the children have been harmed while in her care since this case opened." The court determined, "The adjudicatory harm has lessened to the point that the mother is a viable placement" and "returning the children to the custody of the mother is in the children's best interest." The court ordered the department "to transition the children back into the mother's care within 30 days," with continued services. The younger child's father appealed.

## II. Analysis

The younger child's father contends the record lacks sufficient evidence to support the district court's conclusion that the children "can safely be returned to the custody of their mother." In his view, the mother's dishonesty and "the large weight of credible evidence" militate in favor of granting him custody of the younger child and guardianship of the older child.

Iowa Code section 232.104(7) (2017) states:

> Subsequent to the entry of a permanency order pursuant to this section, the child shall not be returned to the care, custody, or control of the child's parent or parents, over a formal objection filed by the child's attorney or guardian ad litem, unless the court finds by a preponderance of the evidence, that returning the child to such custody would be in the best interest of the child.

As noted, the district court found that transitioning the children to the mother's care would serve their best interests. On our de novo review of the record, we agree.

The department case manager testified the mother was homeless and actively using drugs when the department first became involved. She admitted

the mother made huge progress in the intervening eighteen months; she obtained housing at a residential facility, "maintained employment," attended therapy "[m]ost of the time," met the children's basic needs, and remained sober. The case manager also agreed the boys had "a really strong bond" with her, an opinion that was seconded by a service provider. Indeed, by the end of 2016 and into 2017, the children were spending four to five nights with the mother at the residential facility.

As noted, the sticking point was the mother's lack of honesty. The case manager asserted that the mother failed to disclose an ongoing romantic relationship with a man previously imprisoned for a drug crime or her resulting pregnancy, visited relatives with a known drug history in contravention of department expectations, and encouraged her children not to talk about these developments. She insisted the mother was simply "going through the motions" and "not internalizing the changes that she need[ed] to make." Although, at first blush, the case manager's testimony would appear to undermine, if not destroy, the mother's reunification prospects, the record contains mitigating evidence.

First, the case manager acknowledged the boyfriend's parole officer had no concerns about his sobriety. The boyfriend testified he regularly took drug tests which were negative, he owned his own landscaping company that serviced schools and other businesses, he owned several homes, one of which he had readied for the mother and children, and he was willing to cooperate with the department to facilitate reunification of the children with their mother.[2]

---

[2] Notably, the younger child's father also had a criminal history and admitted to recent and regular marijuana use.

Second, the mother informed the department of her relationship with this boyfriend during the summer of 2016 and advised the department of her pregnancy at the twelve-week mark, well before the permanency review hearing. At that juncture, the department expressed an intent to seek adjudication of the unborn child as a child in need of assistance. While the mother could have been more forthcoming about her continued relationship with the boyfriend, there is no question the agency was aware of the boyfriend and pregnancy.

As for the mother's contact with her relatives, she denied the department's suggestion that the children were at the home of relatives when police raided the home and seized drugs. She testified she took them to see her brother who just had a child and she thought herself "responsible enough to take [the children] to visit their newborn cousin and make sure that they were not exposed to anything that they shouldn't have been."

We are left with the case manager's assertion that the mother told her children not to disclose details about their contacts with her boyfriend and family. The mother acknowledged the truth of this troubling assertion and agreed there was "more work" to be done with her therapist.

Significantly, the therapist opined that the mother could be successful if she had more time. Although she stated the mother was not as "transparent" as she could be with the department, she acknowledged her focus on the importance of transparency had only begun in the previous four weeks. She testified nothing made her question the mother's sobriety and the mother "ha[d] a definite bond with her children."

As the district court found, the mother was not "100% honest" with the department. But given her progress in other realms, we conclude transition of the children to their mother's care—with continued services to address honesty issues—was in the children's best interests.

In reaching this conclusion, we have considered the commendable efforts of the younger child's father to parent both children. This opinion does not address other avenues he may have for obtaining custody of the children. *See* Iowa Code § 232.3(2) (authorizing juvenile court to grant concurrent jurisdiction to another court to litigate "a specific issue relating to the custody, guardianship or placement of the child").

We affirm the district court's permanency review order.

**AFFIRMED.**